UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ANTHONY MIRON,

        Petitioner,

   v.

R. MADDEN, Warden,

        Respondent.

Case No.  22-0900 BLF (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY; DIRECTIONS TO CLERK**

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2018 criminal judgment.  Dkt. No. 1 ("Petition").  Respondent filed an answer on the merits.  Dkt. No. 9 ("Answer").  Petitioner filed a traverse.  Dkt. No. 15 ("Traverse").  For the reasons set forth below, the petition is **DENIED**.

## I. BACKGROUND

A jury convicted Petitioner of three counts of lewd and lascivious conduct upon a child under the age of 14.   *See* Ans., Ex. 1 ("Clerk's Transcript") at 216-18; *see also* Cal. Pen. Code, § 288(a).  In addition, the trial court found that Petitioner had a prior sex offense, two prior serious felony convictions, two prior strikes, and three prison priors. *See* Clerk's Tr. at 145-53; Ans., Ex. 2 ("Reporter's Transcript") at 462; *see also* Cal. Pen. Code §§ 1203.066(a)(5), 667(a)(1)), 667(b)-(j)), 667.5(b)).  On September 14, 2018, the trial court sentenced Petitioner to 22 years in prison.  *See* Clerk's Tr. at 290, Rep.'s Tr. at 485.

//

United States District Court
Northern District of California

On December 30, 2020, the California Court of Appeal ("state appellate court") affirmed the judgment.  *See* Ans., Ex. 6; *see also People v. Miron*, No. A155462, 2020 WL 7640124 (Cal. Ct. App. Dec. 23, 2020) (unpublished).  On December 1, 2021, the California Supreme Court summarily denied a petition for review.  *See* Ans., Ex. 8.

When the last state court to adjudicate a federal constitutional claim on the merits does not provide an explanation for the denial, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, ––– U.S. –––, 138 S.Ct. 1188, 1192 (2018).  "It should then presume that the unexplained decision adopted the same reasoning." *Id.*  Here, the California Supreme Court did not provide an explanation for its denial of the petition for review.  *See* Ans., Ex. 88.  Petitioner did not argue that the California Supreme Court relied on different grounds than the state appellate court.  *See generally,* Pet.  Accordingly, this Court will "look through" the California Supreme Court's decision to the state appellate court's decision.  *See Skidmore v. Lizarraga*, No. 14-CV-04222-BLF, 2019 WL 1245150, at *7 (N.D. Cal. Mar. 18, 2019) (applying *Wilson*).

Petitioner filed the instant federal habeas petition on or after February 3, 2022.  *See* Dkt. No. 1 ("Petition") at 6.  The Petition attaches Petitioner's brief to the Supreme Court of California as argument.  *See generally*, Pet., Ex. A ("Petition Exhibit A").

## II.  STATEMENT OF FACTS

The following background facts are from the opinion of the state appellate court on direct appeal:

> In July 2018, Miron was charged with three counts of lewd and lascivious conduct upon a child (Pen. Code, § 288, subd. (a)).  For each count, it was alleged that Miron had been convicted of a prior sex offense (Pen. Code, § 1203.066, subd. (a)(5)).  Two prior serious felonies, two prior strikes, and three prior prison terms were also alleged.

> Sisters Mariel and M. were responsible for doing their own laundry, and they did it together at a laundromat near their home.  One afternoon in July 2017, M., who was then 11 years old, and Mariel, who was a few years M.'s senior, went to do their

laundry.  Both M. and Mariel testified about that day's events at the laundromat.

M. stated that after placing their laundry in the dryer, she sat down on a bench inside the laundromat while Mariel went to visit the store next door.  While M. was sitting on the bench, Miron, a man she did not know, sat next to her and started talking.  Miron asked M. her name, age, and whether she had a boyfriend.  She answered the questions and told him she was 11, which she later regretted.  Miron also said something about "getting pregnant" but M. could not remember it all.  She understood the comment had something to do with sex, and it made her uncomfortable.  Miron then kissed M.'s cheek "once or twice," which added to her discomfort.  She scooted away from Miron and left the bench when, minutes later, Mariel returned to the laundromat.  M. joined her sister, who was on her phone and checking the laundry, and told her what happened.  Miron continued to follow and watch M. in the laundromat.  Mariel described M. as "scared and confused" and said M. told her that the man had twice kissed her on the cheek.  The girls did not immediately leave the laundromat.  M. wanted to, but she did not want to leave her sister alone with Miron out of fear he would do something to her.  They left when their laundry was done.  On the way out, M. saw Miron at the door and "started speed walking out" of the laundromat.

At home, the girls told their mother what had happened.  M. felt uncomfortable because she did not like what occurred and did not want to talk about it.  M.'s mother, who also testified, said M. "cr[ied] hysterically" and "her face looked like she was panicked" when she spoke.  Eventually, M.'s mother persuaded her to file a report with the police.

At the police station, M. spoke with Officer Jeffrey Lee of the South San Francisco Police Department, who also testified at trial.  Video of her interview was played to the jury.  In the interview M. told Officer Lee that she was sitting on the bench when Miron came and sat next to her.  Miron asked her age and if she had a boyfriend, and made a comment that he would do something but she would get pregnant.  M. understood the comment to be referring to intercourse.  M. said Miron touched her leg, brushing her upper thigh with his finger and then moved towards her knee.  M. reported that Miron kissed her cheek twice despite her attempt to back away from him.  The touching made her feel awkward and scared.  After the kisses, Miron stopped talking and M. got up to look for her sister.  After she walked over to her sister, who was talking on her phone, Miron followed and stood next to them.  As they finished their laundry, Miron watched them from the bench.  When they left, Miron got up to open the door for them and M. ran home.

Days later, Officer Lee reviewed video from the laundromat's surveillance system.  At trial, Officer Lee described the video and clips were played for the jury.  The video showed the sisters

entered the laundromat around 4:18 p.m. After some time, Miron and an adult female companion walked in and stood around for a while. Shortly after 4:30 p.m., Miron's companion left, and so did Mariel. Miron walked over to the bench at the front of the laundromat and sat down next to M. The two appeared to talk. M. stood up, walked to the rear of the laundromat, and then returned to the bench. After some time, Mariel came back. Miron tapped M.'s shoulder and touched her cheek with his right hand. As he did this, he placed his left hand on M.'s right leg. Miron then grabbed M.'s right hand, brought her hand to his mouth, and kissed it. Minutes later, Miron looked around, scooted toward M., leaned in, touched her face and kissed M. on the cheek. Then, he kissed her a second time. After that, M. got up and moved to the rear of the laundromat next to her sister who was standing by a folding table and talking on her phone. Miron approached the girls and stood next to them for a while before leaving the building. He lingered outside for several minutes but eventually re-entered the laundromat and stood near the entrance. Miron opened the door for the girls as they left and touched M.'s shoulder on her way out.

At the conclusion of the prosecution testimony, the jury was read a stipulation that Miron had been previously convicted of a sex offense.

Miron testified on his own behalf, and stated on the day M. and Mariel visited the laundromat, he was there with his fiancée doing laundry. He said he "looked pretty rough," and M. approached him, commented that she was a princess and he was a frog, and invited him to kiss her hand so he could become a prince. He thought she was playing around with him. Miron said he did not know M.'s age but knew she was a minor. He disputed that M. ever told him she was 11 years old and said she never told him her age. He testified, "You really want to know the truth? [¶] ... [¶] She told me she was six years old." He admitted to kissing M.'s hand knowing she was young. When asked if her princess and frog comments led him to kiss her hand, he responded, "I've seen a video. I'm pretty much—I can clear that up as well." He explained, "I reached over, and [M.] had raised her hand so I can touch her hand and play kiss it. It was a playing—it was a playing at the time." Later, he explained, "I didn't rush, all right, right out and—grab the hand and kiss her. She was playing with me. You can see the video. She reached to my hand to kiss it, and she met my hand half and half." When asked if there was sexual intent behind the kiss, Miron responded, "I have three daughters. I have one son. Two marriages. I don't think that was very sexual intent whatsoever, no." He added, "I believe that ... I'm not aroused of any kissing or touching as I am accused ... of." He added that he was attracted to adult females. Miron again denied kissing M.'s hand out of pleasure and emphasized that M. "came to play." Miron also acknowledged he kissed M. twice on the cheek but said he did not act out of lust. When asked if M. had asked for those

kisses, he responded, "Let's just put it this way.... [S]he said the hand, then she ... implied, okay, the cheek, okay."

Miron admitted he was previously convicted of assault with intent to commit rape but distinguished the prior offense because it involved an adult woman.  He also admitted to three other prior convictions.

On rebuttal, Officer Lee testified about his interview with Miron after arresting him[.]  The jury watched the video of the interview.  In the interview, Miron told Officer Lee he was at the laundromat around 2:00 or 3:00 p.m. but not at 4:00 p.m.  He repeatedly denied he ever sat on the bench talking to a young girl.  Eventually, he acknowledged there was a young girl accompanied by her mother who sat next to him on the bench. He believed the girl was 12 to 15 years old.  Miron denied he kissed the girl or touched her in any way.  He said he did not pay any attention to the girl.  Officer Lee told Miron there was surveillance video showing he sat on the bench next to a young girl and kissed the girl's hand and twice kissed her cheek.  The officer told Miron he had an opportunity to be truthful.  Miron responded, "[L]et me think about this."  When Officer Lee again asked Miron about kissing the girl, Miron asked if it was the girl's birthday.  Once again, he denied kissing the girl.  He also denied talking with the girl about having a boyfriend.  He claimed he could not remember what happened, then admitted he had not been telling Officer Lee the truth.  He said he may have whispered something in the girl's ear but did not remember kissing her.

The jury found Miron guilty on all counts.  The trial court found his prior strike allegations to be true.  Miron was sentenced to state prison for 22 years.  This appeal followed.

*Miron*, 2020 WL 7640124, at *1–3.

## III.  DISCUSSION

A.  __Legal Standard__

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).  The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

United States District Court
Northern District of California

the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  *Id.* at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at 409.

**B.   Claims and Analyses**

The Court reviewed the Petition pursuant to rule 4 of the Rules Governing Section 2254 in the United States District Courts and found two cognizable claims: "(1) the trial

court erred in admitting a prior conviction as improper propensity evidence, [Pet.] at 27; and (2) ineffective assistance of counsel, *id.* at 68."  Dkt. No. 5 at 2.

The Court will address each claim in turn.

### 1.     Propensity Evidence Claims

At Petitioner's trial, the prosecution introduced evidence of Petitioner's 1984 conviction of assault with intent to commit rape.  Rep.'s Tr. at 306:12-18.  Petitioner claims that this testimony constituted impermissible character or propensity evidence, and that its admission at trial violated his right to due process and was prejudicial.   *See* Pet. at 27-65.

The facts underlying these claims, as summarized by the state appellate court, are as follows:

> Miron argues the trial court abused its discretion when pursuant to Evidence Code section 1108 it admitted his 1984 conviction for assault with intent to commit rape.  [FN 1.] He further contends the trial court erroneously failed to conduct a balancing test on the record pursuant to section 352.  On all points, we disagree.
>
> [FN 1: All statutory references are to the Evidence Code unless otherwise stated.]
>
> Pursuant to section 1108, the People moved in limine to admit evidence of Miron's 1984 conviction for assault with intent to commit rape.  Miron opposed, and the motion was submitted.  Later that day, in the course of ruling on other pretrial issues, the court stated, "Returning to the 1108 motion, I had a chance to review that.  And, at this point, I'm inclined to allow it."
>
> During trial, the following stipulation was read to the jury: "On August 17th, 1984, in San Francisco County, [Miron] was convicted of a violation of assault with intent to commit rape of an adult female, said offense having occurred on June 7th, 1984.  He was sentenced on October 10th, 1984."  Miron also admitted the conviction during cross-examination.
>
> Pursuant to CALCRIM No. 1191A, the jury was instructed as follows: "The People presented evidence that the defendant committed the crime of assault with intent to commit rape of an adult female which was not charged in this case.  This crime is defined for you in these instructions.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the

1
2
3
4
5
6
7
8
9
10

uncharged offense. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely.  If you decide that the defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the Defendant was disposed or inclined to commit sexual offenses and based on that decision also conclude that the Defendant was likely to commit and did commit a lewd or lascivious act on a child under the age of 14 years as charged here. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the Defendant is guilty of committing a lewd or lascivious act on a child under the age of 14 years.  The People must still prove the charges beyond a reasonable doubt.  Do not consider this evidence for any other purpose."

11  *Miron*, 2020 WL 7640124, at \*3.

12      The state appellate court rejected Petitioner's claim that admission of evidence

13  regarding his 1984 conviction violated Petitioner's due process, finding that the testimony

14  was properly admitted under state evidence rules:

15          Evidence the defendant committed a prior crime is generally
16          inadmissible to prove the defendant likely committed a later
            crime. (§ 1101, subd. (a).) [FN 2.] However, section 1108,
17          subdivision (a), provides an exception to this rule and allows
            admission of evidence of a prior sex offense when a defendant
18          is charged with a sex crime. (§ 1108, subd. (a).) To prevent
            unfair misuse of such propensity evidence, the trial court must
19          analyze whether it is admissible under section 352. (*Ibid.*;
            *People v. Falsetta* (1999) 21 Cal.4th 903, 916-918, 920.)
20
            [FN 2: Section 1101 allows the introduction of prior crime
21          evidence when relevant to prove some fact such as motive,
            opportunity, intent or the lack of consent. (§ 1101, subd. (b.).]
22
            Evidence of a prior sex offense should be excluded under section
23          352 "if its probative value is substantially outweighed by the
            probability that its admission will (a) necessitate undue
24          consumption of time or (b) create substantial danger of undue
            prejudice, of confusing the issues, or of misleading the jury." (§
25          352.) We review a trial court's decision to admit evidence
            pursuant to section 1108 and its application of section 352 for
26          an abuse of discretion. (*People v. Hollie* (2010) 180 Cal.App.4th
            1262, 1274.) "We will not overturn or disturb a trial court's
27          exercise of its discretion under section 352 in the absence of
            manifest abuse, upon a finding that its decision was palpably

28  Case No. 22-00900 BLF (PR)

arbitrary, capricious and patently absurd." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314.)

Here, the trial court did not abuse its discretion when it admitted Miron's prior sex offense.  The Legislature enacted section 1108 because it found "that persons who commit sex offenses often have a propensity to commit sex crimes against more than one victim." (*People v. Escudero* (2010) 183 Cal.App.4th 302, 305-306 (*Escudero*).) "With the enactment of section 1108, the Legislature 'declared that the willingness to commit a sexual offense is not common to most individuals; thus, evidence of any prior sexual offenses is particularly probative and necessary for determining the credibility of the witness.'" (*People v. Soto* (1998) 64 Cal.App.4th 966, 983 (*Soto*); *Escudero*, *supra*, 183 Cal.App.4th at p. 306 [evidence of prior sex offenses is presumed to be admissible to assist trier of fact in evaluating the credibility of the victim and the defendant].) Thus, evidence of Miron's prior sex offense is considered probative of his propensity to commit lewd acts upon M. for sexual gratification and could be reasonably admitted.

But Miron says balancing the section 352 considerations should have resulted in exclusion of the prior sex offense.  He argues it had weak probative value, was highly inflammatory, and too remote in time, and cites several cases to support his assertions.  We disagree, and the cases cited by Miron are factually inapposite and do not compel a contrary conclusion.

We are not persuaded that the prior sex offense had little probative value based on the differences between the victim (an adult woman) and the circumstances surrounding it and the charged offenses against M.  "The charged and uncharged crimes need not be sufficiently similar that evidence of the latter would be admissible under Evidence Code section 1101, otherwise Evidence Code section 1108 would serve no purpose. It is enough the charged and uncharged offenses are sex offenses as defined in section 1108." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 40-41, 43 [no abuse of discretion to admit evidence of the defendant's uncharged acts of sodomy and forcible oral copulation of his six-year-old cousin even though they were different from the charged act of touching the bare buttocks of his nine-year-old niece].) "'Many sex offenders are not "specialists," and commit a variety of offenses which differ in specific character.'" (*Soto*, *supra*, 64 Cal.App.4th at p. 984.) Here, since the prior sex offense evidence involved another female and also showed Miron possessed deviant sexual urges, it was similar enough to the charged offense to have probative value.  Moreover, while lack of similarity is relevant, "that factor is not dispositive." (*People v. Merriman* (2014) 60 Cal.4th 1, 42.) The differences between the two cases here, although relevant to the exercise of discretion under section 352, are not dispositive of whether the evidence meets the requirements for admissibility under section 1108.

We are also not convinced that evidence of the prior sex offense was too inflammatory. To apply this factor, we consider "whether the evidence inflames the jurors' emotions, motivating them to use the information, not to evaluate logically the point upon which it is relevant, but to reward or punish the defense because of the jurors' emotional reaction." (*People v. Valdez* (2012) 55 Cal.4th 82, 145.) While the evidence of the prior sex offense was harmful to Miron, there is no reason to believe it confused the jury or caused them to decide the case on an improper basis. Only the dates and fact of the conviction and specification of the charged offense were presented. There was no detail about Miron's conduct that could have elicited a visceral or emotional response from the jury. Further, the jurors were instructed that they "may but [were] not required" to conclude Miron was disposed to commit sexual offenses and that drawing such a conclusion was "only one factor to consider with all the other evidence." In light of the plain presentation of the evidence and the instruction, we do not consider the evidence highly inflammatory.

Nor was the prior sex offense too remote. "'"No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible."'" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 992.) "Numerous cases have upheld admission pursuant to ... section 1108 of prior sexual crimes that occurred decades before the current offenses." (*Id.* at pp. 992-993 [no error in admitting prior sexual assault conviction from more than 30 years ago]; *People v. Branch* (2001) 91 Cal.App.4th 274, 284 [upholding admission of a sex crime committed 30 years before charged offense].) Accordingly, the 34-year span between the prior sex offense and the charged offense did not render it inadmissible.

The evidence was not unduly prejudicial. Under section 352, evidence should be excluded where its probative value is "substantially outweighed" by the "probability" that its admission will create a "substantial" danger of "undue" prejudice. (§ 352.) "To determine whether section 1108 evidence is admissible, trial courts must engage in a 'careful weighing process' under section 352. [Citation.] 'Rather than admit or exclude every sex offense a defendant commits, trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense.'" (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823-824).) These factors could reasonably be weighed here in favor of admission. (See *Escudero*, *supra*, 183 Cal.App.4th at pp. 306, 312-313

United States District Court
Northern District of California

[admitting evidence of defendant's sexual assaults against two adult women at trial in which defendant was charged with committing lewd acts on a seven year old and rejecting argument that evidence of the sexual assaults was unduly prejudicial].)

Miron also argues the court erred "because it failed to state the evidentiary purpose of the prior act and failed to conduct a balancing test on the record." It is true the trial court gave no detailed explanation for admission of the prior sex offense, nor did it discuss how it weighed the section 352 factors. But the absence of such an explanation is not error.

Miron cites no authority that requires a trial court to state "the evidentiary purpose of a prior sex offense" or the "basis regarding the admissibility of [a defendant's prior] offense." It is clear that the prosecutor sought to admit the prior sex offense to show Miron's propensity to commit such crimes. Based on the admission of the evidence pursuant to section 1108, it is equally clear that Miron's propensity was the purpose for which it was admitted, and the court's instructions to the jury stated as much.

A trial court is not required to "'expressly weigh prejudice against probative value or even expressly state that it has done so, if the record as a whole shows ... the court was aware of and performed its balancing function under Evidence Code section 352.'" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1285; *People v. Silveria* (2020) 10 Cal.5th 195, 275.) The record demonstrates the court's awareness. The prosecutor's motion in limine presented the legal standard for admission of the prior sex offense and referenced section 352. The motion expressly stated that the court "must engage in a careful weighing process under section 352," and over the course of three pages of briefing advocated how that weighing should occur. The parties argued the issue and invoked section 352 considerations throughout. Even Miron acknowledges, "the defense and prosecution both argued why the factors of remoteness in time and factual dissimilarities either rendered the 1984 conviction inadmissible or admissible. Furthermore, both sides used cases that conducted a section 352 analysis of the admissibility of prior acts under section 1108, to support their arguments." On this record, we presume the court understood its responsibilities under section 352 to balance the proffered evidence's probative value against its prejudicial effect. We also presume the court weighed those factors before it decided to admit the prior conviction.

*Miron*, 2020 WL 7640124, at *3–6.

Habeas relief is not warranted here because no remediable federal constitutional violation occurred. First, Petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA, the

1    Supreme Court having reserved this issue as an "open question."  *Alberni v. McDaniel,*

2    458 F.3d 860, 866–67 (9th Cir. 2006); *accord Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th

3    Cir. 2008) (reaffirming *Alberni*).  Second, the Supreme Court "has not yet made a clear

4    ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process

5    violation sufficient to warrant issuance of the writ."  *Holley v. Yarborough,* 568 F.3d 1091,

6    1101 (9th Cir. 2009).  Third, any claim that the state court erred in admitting the evidence

7    under state law is not remediable on federal habeas review.  The state appellate court's

8    ruling that the evidence was properly admitted under state law binds this federal habeas

9    court.  *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005).

10         Moreover, even if the admission of evidence regarding the 1984 conviction was an

11   error of constitutional dimension – which it is not – the Court must consider whether the

12   error had a "substantial and injurious effect or influence in determining the jury's verdict."

13   *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  In this case, it did not.  The state

14   appellate court specifically found that any error would have been harmless when compared

15   to the overwhelming evidence of Petitioner's guilt:

16              In any event, even if the prior sex offense evidence was
                erroneously admitted for whatever reason, we would conclude
17              the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818,
                836.) Even without the prior sex offense, the evidence of
18              Miron's guilt was overwhelming.  M.'s testimony that Miron
                said something about "getting pregnant" and that she understood
19              the comments to refer to intercourse revealed the sexual nature
                of Miron's conduct.  As M.'s police station interview and
20              surveillance video showed, the verbal exchange between the two
                was followed by Miron intimately touching M.  He caressed her
21              cheek, brushed her leg from her upper thigh to knee, took M.'s
                hand to his mouth and kissed it.  He gave M. two kisses on her
22              cheek and looked around the laundromat before doing so.
                Further, when he was examined about his actions at trial, the jury
23              could reasonably infer from his evasiveness and responses that
                Miron was aware his behavior was taboo and not innocent or
24              harmless game playing. In his post-arrest interview with Officer
                Lee, Miron first denied being in the laundromat at the time of
25              the incident and repeatedly denied that he touched or kissed M.
                It was only after he was told of the existence of surveillance
26              video that he reconsidered his answers and acknowledged his
                presence in the laundromat while M. was there.  At trial, he
27              admitted touching and kissing M.  The jury could reasonably

28

*(left margin, vertical text)* United States District Court  Northern District of California

1

2

3

> reject Miron's description of a game the two were playing, especially after viewing his post-arrest interview. There was ample evidence to support the jury's finding that Miron acted with sexual intent. It is not reasonably probable that Miron would have obtained a more favorable result if the jury did not have evidence of his prior sex offense.

4   *Miron*, 2020 WL 7640124, at *3–6. The jury did not convict based solely on the

5   admission of propensity evidence. It actually saw a video of Petitioner groping and kissing

6   the 11-year-old M.; heard from the victim that Petitioner had made sexual comments to her

7   and learned that she had made a prior consistent statement to the police in her initial

8   interview; and heard that Petitioner had lied about the events at least twice in his police

9   interview. There was abundant evidence aside from Petitioner's prior conviction to

10  support the jury's conclusion that he had committed the acts in question and had done so

11  with sexual intent.

12        Moreover, the jury received express instructions that Petitioner's prior offense was

13  admitted only to show a propensity to commit sex offenses; that from this evidence they

14  need not conclude Petitioner "was disposed to commit sexual offenses"; and that even if

15  they drew such a concussion, it "was 'only one factor to consider with all the other

16  evidence.'" *Miron*, 2020 WL 7640124, at *5. It is well-established that "juries are

17  presumed to follow their instructions . . . ." *Richardson v. Marsh*, 481 U.S. 200, 211

18  (1987). Thus, to the extent Petitioner claims his 1984 conviction was relied on for an

19  improper purpose, these jury instructions cured any defect.

20        Considering the "overwhelming" evidence of Petitioner's guilt, as well as the

21  curative jury instructions, any error in admitting evidence of the 1984 conviction did not

22  have a "substantial and injurious effect" on the verdict. *See Dillard v. Roe*, 244 F.3d 758,

23  769–70 (9th Cir. 2001), *amended on denial of reh'g* (May 17, 2001) ("Even if we assume,

24  without deciding, that the trial court [committed constitutional error], that ruling could not

25  have had a 'substantial and injurious effect or influence in determining the jury's verdict.' .

26  . . There was an abundance of other, uncontradicted evidence that Dillard had suffered the

27  convictions alleged.") (citations omitted). Based on the foregoing, the state appellate

28

court's rejection of Petitioner's propensity evidence claims was reasonable and is therefore entitled to AEDPA deference. Accordingly, these claims are DENIED.

### 2. Ineffective Assistance Claims

During Petitioner's trial, the prosecutor asked M. and her mother how Petitioner's actions made them feel. Petitioner contends that these questions elicited sympathy from the jury, and that his counsel should have objected. *See* Pet., Ex. A at 65. Petitioner also contends that the prosecutor misstated the law, informing the jury that Petitioner's prior convictions established intent, and that Petitioner's counsel was ineffective for failing to object to this misstatement. *See id*. Petitioner argues that the testimony and prosecutor's misstatement "likely made jurors assume that [Petitioner] acted with sexual intent." *Id*. at 65.

The facts underlying these claims, as summarized by the state appellate court, are as follows:

> Miron contends that he was deprived of his right to effective assistance of counsel because he was prejudiced when his trial counsel did not object at two points during trial. First, he asserts trial counsel should have objected to the prosecutor's questions to M. and her mother regarding their feelings surrounding the events at the laundromat. He says their responses were barely relevant and "extremely inflammatory." Second, Miron states his counsel should have objected to the prosecutor's assertion in closing argument that Miron's prior non-sex offense convictions which were admitted for impeachment could be used to establish the element of intent for the charged offenses. He says this misstatement of law gave the jury additional and improper evidence to use in evaluating Miron's mental state.

*Miron*, 2020 WL 7640124, at *6.

To garner relief on a claim of ineffective assistance of counsel, a defendant must show: (1) his attorney provided deficient performance and (2) that prejudice ensued as a result. *Strickland*, 466 U.S. at 687-96. To establish deficient performance, the defendant must show "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A court considering a claim of ineffective assistance must apply a "strong

United States District Court
Northern District of California

United States District Court
Northern District of California

presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. *Id.* at 689. In other words, a reviewing court's scrutiny of counsel's actions or omissions is highly deferential when evaluating allegations of deficient performance. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

The defendant carries the burden of demonstrating that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The issue is not what the best lawyer would have done, or even what a majority of good lawyers would have done, but whether some reasonable lawyer could have acted in the challenged manner when facing the same circumstances as counsel in the present case. *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, *Coleman v. Calderon,* 525 U.S. 141 (1998). The inquiry into counsel's performance is "extremely limited." *Id.*

Additionally, under AEDPA, the pivotal question is whether the state court's application of the *Strickland* either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard....A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. Thus, a federal habeas court must use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

1     The state appellate court rejected Petitioner's claim, finding that counsel's failure to

2 object did not prejudice Petitioner:

> 3     We reject both contentions.   Here, we "'need not determine
>       whether counsel's performance was deficient before examining
> 4     the prejudice suffered by the defendant as a result of the alleged
>       deficiencies....   If it is easier to dispose of an ineffectiveness
> 5     claim on the ground of lack of sufficient prejudice, ... that course
>       should be followed.'"   (*Carrasco*, *supra*, 59 Cal.4th at p. 982.)
> 6     Even if we assume without deciding counsel was deficient for
>       the reasons raised, Miron cannot show prejudice on this record.
> 7     Had trial counsel raised these objections and the court sustained
>       them, the result would have been no different for the same
> 8     reasons discussed above in our harmless error analysis of the
>       admission of Miron's prior sex offense.

9

10 *Miron*, 2020 WL 7640124, at *7.

11     The Court finds that the Court of Appeal reasonably applied *Strickland* in rejecting

12 Petitioner's ineffective assistance claims.  *See* 28 U.S.C. § 2254(d)(1).

13     First, it was not error for the Court of Appeal to decide Petitioner's ineffective

14 assistance claims based on an inquiry into whether Petitioner was prejudiced, rather than

15 first inquiring whether counsel's performance was deficient.  The U.S. Supreme Court has

16 held that "there is no reason for a court deciding an ineffective assistance claim to

17 approach the inquiry in the same order or even to address both components of the inquiry

18 if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.  The

19 Court of Appeal was not unreasonable in rejecting these claims based solely on the lack of

20 prejudice.

21     Second, the Court finds that the Court of Appeal was not unreasonable in

22 concluding that Petitioner suffered no prejudice.  Petitioner argues that the only reason the

23 jury inferred he was motivated by sexual intent is because of the challenged testimony and

24 prosecutorial statements.  *See, e.g.*, Pet. at 66 (arguing that the prosecutor's statement "was

25 likely the factor that swayed jurors into" inferring Petitioner had sexual intent); *see also id*.

26 at 72-73.  This simply is not true.  As noted above, the jury heard directly from M. that

27 Petitioner made sexual comments to her and groped her.  It learned that she had made a

28

prior consistent statement in her police interview.  The jury saw a surveillance video of Petitioner touching M.'s thigh in a sexual manner and kissing her, which is consistent with M.'s statements.  It also learned that Petitioner had lied about the events in his police interview, first denying he interacted with M. at all, and then denying he had kissed her.  And when give the opportunity to speak directly to the jury, Petitioner explained the events as play-acting the fairy tale of the princess and the frog; this story, even if believed by the jury, would have explained only the kisses on M. hand and cheek, but still would not explain Petitioner's groping of M.'s thigh.  As the Court of Appeal found,[1] there was overwhelming evidence that Petitioner's actions were motivated by sexual intent.  *See Miron*, 2020 WL 7640124, at *7.  The Court of Appeal therefore was not unreasonable in finding Petitioner was not prejudiced by counsel's failure to object to testimony or to the prosecutor's statements.

Based on the foregoing, the state appellate court's rejection of Petitioner's ineffective assistance claims was reasonable and is therefore entitled to AEDPA deference.  Accordingly, these claims are DENIED.

## IV.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition must be **DENIED**.

Further, a Certificate of Appealability is **DENIED**.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may

---

[1] Respondent argues that any error also was cured by jury instructions.  *See* Ans. at 9-10. A review of the Court of Appeal's opinion reveals that the Court of Appeal did not analyze jury instructions in connection with the alleged errors underlying Petitioner's ineffective assistance claims.  *See Miron*, 2020 WL 7640124, at *6-7.  Because the Court of Appeal did not analyze this issue, and because this argument is unnecessary in light of the Court of Appeal's reasonable finding that Petitioner was not prejudiced, the Court will not analyze these arguments.

not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated:_____April 14, 2023_____



BETH LABSON FREEMAN
United States District Judge